# In the United States District Court
## for the Southern District of Georgia
### Brunswick Division

| | | |
|---|---|---|
| CHRISTOPHER P. WESOLOWSKI, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CV 211-163 |
| | * | |
| JANET NAPOLITANO, Secretary, United | * | |
| States Department of Homeland Security, | * | |
| | * | |
| Defendant. | * | |

## ORDER

Presently before the Court is a Motion to Dismiss Plaintiff's Amended Complaint filed by Defendant Napolitano. See Dkt. No. 32.  For the reasons stated below, Defendant's Motion is **DENIED**.

### BACKGROUND

The present employment discrimination suit concerns Wesolowski's employment as an instructor at the Federal Law Enforcement Training Center ("FLETC").  See Dkt. No. 27. According to Wesolowski's Amended Complaint, his Employer retaliated against him in several employment decisions because Wesolowski engaged in protected activity by complaining about the "sex-stereotyping" Wesolowski endured for his failure to

1

conform to traditional male grooming standards.  See Dkt. No. 27, ¶¶ 18-21.  Namely, Wesolowski wore an earring and had long hair which he wore in a pony tail.

For purposes of this Motion, the facts are drawn exclusively from the allegations in Wesoloswski's Complaint. These allegations are assumed to be true.  Weissman v. Nat'l Ass'n of Sec. Dealers, Inc., 500 F.3d 1293, 1295-1296 (11th Cir. 2007) (stating that, in evaluating motions to dismiss, all inferences are to be drawn in light most favorable to plaintiff and all factual allegations are taken as true).  Wesolowski alleges that, around February 2008, some of his co-workers began ridiculing him about his personal appearance.  Dkt. No. 27, ¶ 18.  Wesolowski notified his management chain, which included Branch Chief Tony Lambraia and Division Chief Randy Melvin, about the comments.  Dkt. No. 27, ¶ 22.  In response, Lambraia and Melvin held a counseling session with Wesolowski and Tom Crabill, the main perpetrator.  Dkt. No. 27, ¶ 23.  In Wesolowski's opinion, this was a "weak attempt to stop the behavior" as no discipline was taken against Crabill.  Dkt. No. 27, ¶ 23.

Wesolowski also alleges that in April 2008, the same month as the counseling session with Crabill, Wesolowski learned that another colleague, Bob Pitchford, reported a "false rumor" to the Chief Security Officer that Wesolowski was "holding himself

2

out as an undercover agent for the Special Investigations Division." Dkt. No. 27, ¶ 24. Although Wesolowski contends this rumor was false, no disciplinary action was taken against Pitchford. Dkt. No. 27, ¶ 29.

In June 2008, Wesolowski interviewed for a promotion to a GS-13 Senior Instructor position ("the First Vacancy"). Dkt. No. 27, ¶ 31. Among the other applicants were Crabill, Tony Barber, and several candidates from outside the Tactics Branch. Dkt. No. 27, ¶ 32. The interview panel included Lambraia, Adrianna Rodinni, and Bill Mossburg with Melvin serving as the selecting officer. Dkt. No. 27, ¶ 33. Wesolowski alleges that Lambraia, Melvin, and Mossburg knew about Wesolowski's opposition to his co-workers comments. Dkt. No. 27, ¶¶ 34-35. After interviews concluded, the panel ranked their top three candidates. Dkt. No. 27, ¶ 36. Crabill was ranked first, with Wesolowski ranked second, and Barber ranked third. Dkt. No. 27, ¶ 36. In July 2008, the panel formalized its recommendation to hire Crabill for the First Vacancy. Dkt. No. 27, ¶ 33.

Wesolowski did not learn of Crabill's selection until September 4, 2008. Dkt. No. 27, ¶ 52. Five days later, on September 9, 2008, two new vacancies for positions identical to the one Crabill was selected for were announced ("the Second and Third Vacancies"). Dkt. No. 27, ¶ 75.

AO 72A
(Rev. 8/82)

The following week, on September 15, 2008, Wesolowski contacted an Equal Employment Opportunity ("EEO") counselor. Dkt. No. 27, ¶ 53. Three days later Humkey, the new Tactics Branch Chief, "either encouraged or allowed" Pitchford to file a "false" violence in the workplace complaint against Wesolowski based on a verbal altercation between the two employees. Dkt. No. 27, ¶ 58. Pitchford's complaint was dismissed prior to any investigation because of an audio tape that Wesolowski provided of the actual exchange. Dkt. No. 27, ¶ 65. After reviewing Wesolowski's tape, the applicable decision maker concluded that no violence in the workplace had occurred. Dkt. No. 27, ¶ 65.

Seven days after Wesolowski contacted an EEO counselor, on September 22, 2008, Wesolowski was allegedly "verbally accosted" by Ron Rods, a Senior Instructor in the Tactics Branch and a friend of Crabill and Pitchford. Dkt. No. 27, ¶ 69. Rods interrupted Wesolowski's class three times and yelled at Wesolowski to "hurry up" and "knock off with all the bull___t stories." Dkt. No. 27, ¶ 70. Wesolowski left his class to ask Rods what he was doing, at which point, Rods began disparaging Wesolowski's law enforcement background and teaching credentials loudly enough for the students to hear. Dkt. No. 27, ¶ 71. Humkey, Rods' superior, did not discipline Rods despite confirming "that it was inappropriate and unprofessional" for Rods to have spoken that way. Dkt. No. 27, ¶ 71.

AO 72A
(Rev. 8/82)

On September 30, 2008, Humkey was interviewed by the EEO counselor regarding Wesolowski's EEO complaint. Dkt. No. 27, ¶ 74. Around this same time frame, Humkey served as the Recommending Official for the Second and Third Vacancies. Dkt. No. 27, ¶ 72. Mossburg, who had served on the interview panel for the First Vacancy, recommended that Humkey make his selection based on the earlier roster. Dkt. No. 27, ¶ 76. Humkey had not participated in the earlier selection because, as of the First Selection, Humkey had not yet been appointed Tactics Branch Chief. Dkt. No. 27, ¶ 58. Humkey opted to conduct the entire application and interview process over to fill the Second and Third Vacancies. Dkt. No. 27, ¶¶ 76-77. Had Humkey used the existing roster, Wesolowski would have automatically been promoted, as he was the next highest candidate.

Instead, Barber and Donald Glisson were selected to fill the Second and Third Vacancies. Dkt. No. 27, ¶ 80. Barber had been ranked below Wesolowski after interviews for the First Vacancy, which involved the same selection criteria. Dkt. No. 27, ¶ 81. FLETC's human resources department had found Glisson to be ineligible for the First Vacancy for reasons not clear from the Amended Complaint. Dkt. No. 27, ¶ 79. Wesolowski contends that he was more qualified than either Barber or

AO 72A
(Rev. 8/82)

Glisson and that Humkey's explanation for his selections was pretextual. Dkt. No. 27, ¶ 85.

Two months after Barber and Glisson were selected for the Second and Third Vacancies, Wesolowski received an email from Rods that was apparently intended for Humkey. Dkt. No. 27, ¶ 88. Rods claimed to have seen Wesolowski sitting down and eating candy while conducting training. Dkt. No. 27, ¶ 88. Wesolowski complained to Melvin, Wesolowski's second-level superior, about the email. Dkt. No. 27, ¶ 89. Melvin told Wesolowski that he had nothing to do with any of the Instructors "spying" on Wesolowski, but admitted that it "kind of agitat[ed]" him to know that Wesolowski might think he did. Dkt. No. 27, ¶ 89. To Wesolowski's disappointment, Melvin directed Wesolowski to confront Rods but did not otherwise discipline Rods. Dkt. No. 27, ¶ 90.

Wesolowski decided that he could no longer tolerate the hostility in the Tactics Branch and requested a transfer to another division. Dkt. No. 27, ¶ 91. He was later transferred to the Driver and Marine Division, where Wesolowski has performed well and without incident. Dkt. No. 27, ¶¶ 92-95. On March 13, 2011, Wesolowski was promoted to a GS-13 position, which is the same level position as the First, Second, and Third Vacancies. Dkt. No. 27, ¶ 95.

AO 72A
(Rev. 8/82)

After Wesolowski's EEO complaint was dismissed on July 5, 2011, Wesolowski filed the present suit in federal court. Dkt. No. 27, ¶ 96. The Amended Complaint asserts three counts. In Count I, Wesolowski seeks redress for alleged retaliation in violation of Title VII's opposition clause for not being selected for the First Vacancy. See Dkt. No. 27. In Count II, Wesolowski asserts that Defendant violated both the participation and opposition clauses of Title VII by failing to select him for either the Second or Third Vacancies. See Dkt. No. 27. Count III alleges that Wesolowski suffered "other materially adverse actions" which constituted retaliation under Title VII. See Dkt. No. 27. Defendant seeks dismissal of all three counts. Dkt. No. 32.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard does not require "detailed factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In order to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must

7

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

It is important to note that while the factual allegations set forth in the complaint are to be considered as true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 129 S.Ct. at 1949). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949. The court does not need to "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

## DISCUSSION

As an initial matter, it is helpful to focus in on the exact nature of the claims Wesolowski has chosen to pursue. All of Wesolowski's claims concern retaliation, rather than discrimination in the first instance. "When an individual is subjected to reprisal because he has complained about . . . discrimination, the injury he suffers is not on account of his [gender]; rather, it is the result of his *conduct*." GBOCS West,

8

Inc. v. Humpries, 553 U.S. 442, 460 (2008). Wesolowski seeks redress not because Defendant discriminated against him based on sexual stereotyping, but because allegedly he engaged in protected activity. Additionally, as Wesolowski clarified in his response to Defendant's Motion, Wesolowski is not asserting any hostile work environment claims. See Dkt. No. 40 at 19.

## I. Count I-Retaliation Based on the First Vacancy

Wesolowski's first count concerns his non-selection for the First Vacancy, which he alleges was done in violation of Title VII's opposition clause. See Dkt. No. 27. The opposition clause makes it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by [Subchapter VI]." 42 U.S.C. § 2000e-3(a). At the time of the selection for the First Vacancy, Wesolowski had opposed his colleagues' derogatory comments about his appearance, but had not yet participated in the EEO process. Thus, this first count is made only under the opposition clause of § 2000e-3(a) and not the participation clause, which prohibits discrimination because an employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing . . ." See 42 U.S.C. § 20003-3(a).

To establish his prima facie case for a retaliation claim under Title VII, "the plaintiff must show that (1) []he engaged

9

in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to plaintiff's protected activities." Little v. United Technologies, Carrier Transicold Div., 103 F.3d 956, 959 (11th Cir. 1997). For claims based on the opposition clause, a plaintiff must also establish "that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." Id. at 960. This requirement contains both a subjective and objective component; "[a] plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented." Id. (emphasis in original).

Wesolowski has sufficiently alleged that he engaged in statutorily protected activity. Wesolowski notified his managers, Lambraia and Melvin, that he was being subjected to ridicule due to "sex stereotyping" by his co-worker, Crabill. Dkt. No. 27, ¶ 99. Nothing in the Complaint suggests Wesolowski's opposition was not in good faith. At the time of his first complaint to management in April of 2008, the First Vacancy had yet to be announced, thus Wesolowski had no reason to "insulate" himself and sow the seeds of a retaliation claim as Defendant suggests.

AO 72A
(Rev. 8/82)

Additionally, from the basis of the Amended Complaint, Wesolowski's good faith belief was objectively reasonable in light of the fact that numerous courts across the country have held that comments based on a plaintiff's failure to conform to sexual stereotypes are actionable under Title VII.  See Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), abrogated by statute on other grounds as recognized by Landraf v. USI Film Products, 551 U.S. 244, 251 (1994); Glenn v. Bumbry, 663 F.3d 1312, 1317-19 (11th Cir. 2011) (surveying sexual stereotyping cases); Lewis v. Heartland Inns of Am., LLC, 591 F.3d 1033, 1038 (8th Cir. 2010) (recognizing the continuing validity of Price Waterhouse's sexual stereotyping holding); Nichols v. Azteca Rest. Enters., Inc., 256 F.3d 864, 874 (9th Cir. 2001) (waiter that was harassed by his co-workers for carrying a serving tray "like a woman" stated a claim for sexual harassment under Title VII because his antagonists were animated by his gender-nonconforming behavior.)

Furthermore, for a retaliation claim, the plaintiff need not prove that the employment practice, here sex-stereotyping based on long hair and an earring, is in fact unlawful, only that he had a reasonable good faith belief that it was.  See Little, 103 F.3d at 960 ("A plaintiff, therefore, need not prove the underlying discriminatory conduct that he opposed was actually unlawful in order to establish a prima facie case and

11

overcome a motion for summary judgment."); Parker v. Bailtimore
& O.R. Co., 652 F.2d 1012, 1020 (D.C. Cir. 1981) (even if
plaintiff's opposition was based on a mistake of law or fact, he
still can succeed on an opposition clause claim).

Wesolowski has also sufficiently alleged that an adverse
employment action occurred, namely that he was passed over for a
promotion during the First Vacancy selection. "[G]enerally the
denial of a promotion is an adverse employment action."
Pennington v. City of Huntsville, Ala., 261 F.3d 1262, 1267
(11th Cir. 2001) (citing Walker v. Mortham, 158 F.3d 1177, 1187
(11th Cir. 1998)).

Finally, Wesolowski has sufficiently alleged causation to
survive a motion to dismiss. Defendant's decision to hire
Crabill for the First Vacancy occurred just two months after
Wesolowski's opposition. See Dkt. No. 27, ¶ 99. Three of the
four decision-makers were aware of Wesolowski's protected
conduct. Dkt. No. 27, ¶¶ 34-35. Additionally, one of the
members of the interview panel stated that Wesolowski "had
virtually no chance to be selected for the position over . . .
Crabill" because Crabill had participated in the Active Shooter
Program, a program which Wesolowski had sought to participate
in, but had been denied by Lambraia, one of the interview panel
members. See Dkt. No. 27, ¶ 51.

12

In sum, Count I of Wesolowski's Amended Complaint should not be dismissed at this time.

## II. Count II-Retaliation Based on the Second and Third Vacancies

Count II differs from Count I in that, as of the time of the Second and Third Vacancies, Wesolowski had initiated EEO proceedings. Wesolowski contacted an EEO counselor on September 15, 2008 and Barber and Glisson were not selected for the Second and Third Vacancies until October 17, 2008. Dkt. No. 27, ¶¶ 74, 87. While Wesolowski's formal EEO complaint was not filed until October 27, 2008, the EEO counseling was sufficient to trigger the protection of the participation clause. See Hashimoto v. Dalton, 118 F.3d 671, 680 (9th Cir. 1997) ("Under the participation clause . . . there can be little doubt that [the plaintiff's] visit with the EEO counselor constituted participation 'in the machinery set up by Title VII.'"); Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1312 (6th Cir. 1989) ("The 'exceptionally broad protection' of the participation clause extends to persons who have 'participated in any manner' in Title VII proceedings.") (citations omitted); Eastland v. Tenn. Valley Auth., 704 F.2d 612, 627 (11th Cir. 1983) (concluding that "contact with the EEO counselor was itself 'protected activity'"); Gonzalez v. Bolger, 486 F. Supp. 595, 601 (D.C.C. 1980), aff'd 656 F.2d 899 (D.C. Cir. 1981) ("Once plaintiff, acting for himself or as a representative,

13

initiates pre-complaint contact with an EEO counselor . . . he is participating in a Title VII proceeding.") (citation omitted).

The fact that Count II arises under the participation clause is significant.  While a plaintiff must demonstrate that he had a reasonable good faith belief for opposition clause activity, there is no such requirement for participation clause activity.  This stems from the different purposes served by the opposition clause and the participation clause.  See Merritt v. Dillard Paper Co., 120 F.3d 1181, 1187 (11th Cir. 1997) ("The opposition clause by its very nature focuses upon the motive of the employee, covering only one who 'has opposed' any practice which violates Title VII.  By contract, the participation clause . . . is not so limited."); Booker, 879 F.2d at 1312 (explaining how the participation clause provides wider and stronger protection than the opposition clause); Sias v. City Demonstration Agency, 588 F.2d 692, 695 (9th Cir. 1978) ("The considerations controlling the interpretation of the opposition clause are not entirely the same as those applying to the participation clause" because "[t]he purpose of the latter is to protect the employee who utilizes the tools advanced by Congress to protect his rights.").

Defendant urges this Court to extend the opposition clause's reasonable good faith requirement to the participation

AO 72A
(Rev. 8/82)

clause either for all participants in EEO activity or solely for participants who were assisted by counsel in the EEO proceedings. See Dkt. Nos. 32, 42. This Court declines to do so because such an extension would be inconsistent with applicable case law and inconsistent with the EEOC guidelines.

In addressing this issue, the First, Third, Sixth, Eight, and Ninth Circuits have held that a participation clause plaintiff is not required to have had a reasonable basis for the EEOC charge or to have made the charge in good faith. See Slagle v. Cnty. of Clarion, 435 F.3d 262 (3d Cir. 2006) (citing case law and the EEOC Compliance Manual for the proposition "that a plaintiff is protected under the participation clause 'regardless of whether the allegations in the original charge were valid or reasonable'"); Johnson v. Univ. of Cincinnati, 215 F.3d 561 (6th Cir. 2000) (stating that the participation clause's protections "are not lost if the employee is wrong on the merits of the charge" or even "if the contents of the charge are malicious or defamatory"); Brower v. Runyon, 178 F.3d 1002, 1006 (8th Cir. 1999) ("The underlying charge need not be meritorious for related activity to be protected under the participation clause.") (citations omitted); Wyatt v. City of Boston, 35 F.3d 13, 15 (1st Cir. 1994) ("As for the participation clause, 'there is nothing in its wording requiring that the charges be valid, nor even an implied requirement that

15

they be reasonable.") (citations omitted); Sias, 588 F.2d at 695 (stating that it is "well settled" that the participation clause protects an employee regardless of the merits of his or her EEOC charge); Pettway v. Am. Cast Iron Pipe Co., 411 F.2d 998, 1007 (5th Cir. 1969) (fact that employee made false and malicious statements in the EEOC charge is irrelevant). The Seventh Circuit, in contrast, has required that a participation clause plaintiff demonstrate that his EEO complaint was not "utterly baseless." Mattson v. Caterpillar, Inc., 359 F.3d 885 (7th Cir. 2004).

The Eleventh Circuit has specifically reserved ruling on this issue. Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1452, 1455 (11th Cir. 1998) (per curiam) ("[W]e need not decide whether protection from retaliation under the participation clause is conditioned by a good faith, reasonable basis requirement."). Prior to the creation of the Eleventh Circuit, the Fifth Circuit addressed this issue and decided in Pettway that an employee's basis, or lack thereof, for filing an EEO complaint is irrelevant in evaluating a retaliation claim. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981) (adopting all Fifth Circuit opinions handed down prior to close of business on September 30, 1981 as binding precedent); Pettway, 411 F.2d at 1007. Absent a decision to the contrary

16

from the Eleventh Circuit, this Court will follow <u>Pettway</u> and the clear majority rule.

Additionally, the EEOC Compliance Manual makes a clear distinction between opposition and participation, requiring a reasonable good faith belief for the former and explicitly not requiring that for the latter. The Compliance Manual states:

> An individual is protected from retaliation for opposition to discrimination as long as s/he had a reasonable good faith belief that s/he was opposing an unlawful discriminatory practice, and the manner of opposition was reasonable. An individual is protected against retaliation for participation in the charge process, however, regardless of the validity or reasonableness of the original allegation of discrimination.

<u>EEOC Compliance Manual</u>, § 2-II(A)(5)(2009). EEOC Guidelines, "'while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which the courts and litigants may properly resort for guidance.'" <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 65 (1986) (citing <u>Gen. Elec. Co. v. Gilbert</u>, 429 U.S. 125, 141-42 (1976)). This Court declines to adopt a reasonable good faith requirement for participation clause claims in light of these authorities.

As discussed above, Wesolowski's failure to receive a promotion constitutes an adverse employment action. Wesolowski has also sufficient alleged a causal connection based on the

AO 72A
(Rev. 8/82)

following facts: Humkey, prior to the selections, had been interviewed regarding the EEO complaint; Humkey specifically chose not reuse the roster compiled for the First Vacancy, which would have meant automatic selection for Wesolowski; the hiring of Glisson and Barber occurred approximately a month after Wesolowski contacted an EEO counselor; Barber, who was selected rather than Wesolowski, had marked lower than Wesolowski for the First Vacancy selection; and human resources just a few months earlier had determined Glisson to be ineligible for the First Vacancy, yet he received the promotion over Wesolowski. The Amended Complaint sufficiently alleges, with reference to specific facts, that Wesolowski's participation in EEO proceedings caused him to be passed over by less qualified candidates for the Second and Third Vacancies.

### III. Count III—Other Materially Adverse Actions

Wesolowski has identified the following alleged conduct as the basis for his final count: (1) the false violence report made by Wesolowski's colleague, Pitchford, and his manager, Humkey, to the Chief Security Officer at FLETC claiming that Wesolowski had committed violence at the workplace, "a charge that, if proven, would all but ruin [Wesolowski's] career in law enforcement;" (2) Wesolowski's managers, including Lambraia, allowing another tactics instructor, Rods, to berate and belittle Wesolowski in front of students; and (3) Wesolowski's

AO 72A
(Rev. 8/82)

managers failure to discipline Rods for his behavior.  Dkt. No. 27, ¶ 123.

As discussed previously, to state a retaliation claim, a plaintiff must show that he suffered an adverse employment action.  See Wideman, 141 F.3d at 1454.  For a retaliation claim, an action is considered materially adverse and sufficient to support a claim if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006); Crawford v. Caroll, 529 F.3d 961, 973 (11th Cir. 2008) (finding that the Supreme Court's decision in Burlington "broadened" the type of employer conduct actionable in a retaliation claim).  "Although 'Title VII's protection against retaliatory discrimination extends to adverse action which fall short of ultimate employment decisions,' the plaintiff must still demonstrate 'some threshold level of substantiality.'" Cotton v. Cracker Barrel Old Country Store,Inc., 434 F.3d 1227, 1233 (11th Cir. 2006) (citing Wideman, 141 F.3d at 1456). Courts "look to the 'totality of the alleged reprisals' to determine whether this burden has been met."  Id.  The actions are to be considered collectively; thus, even if an action on its own would not constitute an adverse employment action, when combined with the "total weight" of the actions, the plaintiff's

AO 72A
(Rev. 8/82)

burden may be met.  See Shannon v. Bellsouth Tellcomms., Inc., 292 F.3d 712, 716 (11th Cir. 2002).

At this early stage in the litigation, it is still plausible for Plaintiff to prove that Humkey, Wesolowski's manager, pushed Rods to file the false violence in the workplace complaint against Wesolowski despite it being apparent to Humkey that such a complaint was not warranted.  The Amended Complaint alleges that Pitchford admitted that he "really didn't think a whole lot about" the verbal exchange that served as the basis of the complaint and that Pitchford filed the complaint only as a result of Humkey's suggestion.  See Dkt. No. 27, ¶¶ 59-61. Humkey and Pitchford may have different recollections of the event, and each may suggest that it was the other who raised the idea of filing a complaint.  See Dkt. No. 27, ¶ 61.  The Amended Complaint contains sufficient facts to make it plausible that the false violence in the workplace claim was filed at the behest of Humkey to retaliate against Wesolowski's protected activity.

Had the charge been sustained, Wesolowski alleges that he would have likely lost his job and it "would [have] all but ruin[ed] [his] career in law enforcement."  Dkt. No. 27, ¶ 66, 123.  The false filing of such a complaint would very likely dissuade any reasonable employee from pursuing an EEOC complaint.  See Crawford, 529 F.3d at 974  (holding that

AO 72A
(Rev. 8/82)

plaintiff suffered materially adverse action within meaning of Title VII's retaliation provision because of an unfavorable performance review that directly affected eligibility for merit pay increase).

Defendant argues that "FLETC had a policy regarding workplace violence which requires the reporting of even rumors of such an incident." Dkt. No. 32 at 43. Defendant contends that "[a]s a supervisor apprised of such an accident, it was Humkey's duty to report it." Dkt. No. 32 at 43. FLETC's policy, however, is not referenced or attached to the Amended Complaint. "A court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss." Bickley v. Caremark RX, Inc., 461 F.3d 1325, 1329 n.7 (11th Cir. 2006). At this juncture, this Court is not determining that FLETC's policy could not support a summary judgment motion, only that it cannot support dismissal. See Cotton, 434 F.3d at 1234 (enforcement of internal policy without evidence of selective enforcement is not an adverse action). Indeed, in denying the Motion to Dismiss, the Court in no way adopts any of the allegations in the Amended Complaint as its own or signals that the case will or will not survive a motion for summary judgment.

The Amended Complaint also sufficiently alleges a causal connection between the adverse actions and Wesolowski's

21

protected activity.   The false violence complaint occurred a mere three days after Wesolowski had contacted an EEO counselor. Thus, this Court cannot determine based on the Amended Complaint that the two events were "wholly unrelated."   McCann v. Tillman, 526 F.3d 1370, 1376 (11th Cir. 2008).   Dismissal of Count III is therefore inappropriate.

## CONCLUSION

Defendant's Motion to Dismiss Plaintiff's Amended Complaint, Dkt. No. 32, is **DENIED**.


**SO ORDERED**, this 25th day of March, 2013.


LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)